IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| S2G-UTAH, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION FILE NO. _____ |
| | ) |
| MJS2, LLC D/B/A GROWTHOPS and | ) |
| WILLIAM GRAY, | ) |
| | ) JURY TRIAL DEMANDED |
| Defendants. | ) |

## COMPLAINT

COMES NOW Plaintiff S2G-Utah, LLC, ("S2G") and for its original complaint against Defendant MJS2, LLC d/b/a GrowthOps ("GrowthOps") and William A. Gray ("Gray" and, with GrowthOps collectively, "Defendants"), respectfully alleges as follows:

## PARTIES

1. Plaintiff S2G is a Texas limited liability company, with its principal place of business in Waco, McLennan County, Texas.

2. Defendant MJS2, LLC d/b/a GrowthOps ("GrowthOps") was a Georgia limited liability company, organized and existing under the laws of

Georgia, with its principal place of business at 3101 Cobb Parkway, Suite 124, Atlanta, GA 30339 until its license was Administratively Revoked in 2015 by the Georgia Secretary of State. GrowthOps may be served with process on its former member and registered agent William A. Gray at 281 Broadland Road, Atlanta, GA 30342 or wherever he may be found. Despite having its license administratively revoked, GrowthOps continues to transact business in Georgia and within this judicial district, where it maintains its principal place of business. On information and belief, the member(s) of GrowthOps are resident(s) of the State of Georgia and perhaps the State of Indiana and none of the former members of GrowthOps reside in the State of Texas.

3. Defendant Gray is an individual residing in Atlanta, Fulton County, Georgia. Gray may be served with process at 281 Broadland Road, NW, Atlanta, Georgia 30342, or wherever he may be found.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there exists complete diversity of citizenship between S2G and Defendants, and the amount in controversy exceeds $75,000, exclusive of costs.

5. Personal jurisdiction and venue are proper in this district pursuant to, *inter alia*, 28 U.S.C. § 1391 because 1) Defendant GrowthOps had its principal place of business in this District, and regularly conducted business in this District,

and 2) Defendant Gray resides in Fulton County, Georgia. Moreover, the agreement giving rise to the causes of action contains a venue selection clause requiring that any action under the contract be brought in Fulton County, Georgia.

## FACTUAL BACKGROUND

6. S2G is a telephone and internet-based customer service provider. S2G hires and trains customer service agents to provide customer support for businesses. While individual customer service agents are located primarily in Utah, S2G's principal decision makers are located primarily in Texas, and S2G's operations are managed and directed from Texas.

7. Unbeknownst to S2G, on December 31, 2015, GrowthOps was administratively dissolved/revoked by the Georgia Secretary of State. Thus, as of December 31, 2015, GrowthOps only existed as a corporate entity to carry out any business necessary to wind up and liquidate its business and affairs.

8. Since December 31, 2015, Defendant Gray failed to apply for GrowthOps' reinstatement of its status prior to its dissolution, and the five-year timeframe for Defendant Gray to do so has lapsed.

9. In July of 2019, Defendant Gray – a member of GrowthOps – knowingly and falsely represented GrowthOps as an operational and compliant business that could carry on any business when he executed a contract on behalf of GrowthOps with S2G for S2G to provide customer support services to GrowthOps

for the benefit of GrowthOps's customer (the "Customer") through a "Master Services Agreement" ("MSA") and its related "Scope of Work" ("SOW") document. GrowthOps had its own services contract with its Customer and then contracted out certain of those services to S2G through the MSA/SOW.

10. As material consideration for the MSA/SOW, S2G agreed to assume a lease of a commercial building in Utah previously used by the Customer in exchange for GrowthOps guaranteeing payment of the sublease through the remainder of its term.

11. To pay S2G for the assumption of the lease and because GrowthOps itself could not assume the lease, GrowthOps agreed to deposit funds on a monthly basis into an escrow account (the "Escrow") to offset future rental payments on the lease being assumed by S2G. The parties intended for S2G to use the Escrow to make future rental payments on the assumed lease in the event GrowthOps's Customer terminated its contract with GrowthOps prior to the expiration of the lease.

12. In an email dated July 10, 2019, S2G's counsel specifically asked Defendant Gray, "I understand that the Escrow Agent has to review the Escrow Agreement. But to be clear, I would like for you to confirm that as to the terms of the Escrow Agreement we are in agreement between ourselves, and in particular as to the method of handling Escrow/Rent payments, even though that document will

not be signed quite yet…" Seventeen minutes later, Defendant Gray responded, "…we are in Agreement." A true and accurate copy of the July 10, 2019 email is attached hereto as Exhibit A.

13. Throughout late July of 2019 and August of 2019, Defendants represented to S2G that they were trying to work out issues with potential escrow agents. In an email dated July 12, 2019, Defendants' counsel wrote, "[w]e would like to close out the Escrow Agreement as soon as we can…please incorporate the signed Sublease into the Agreement Exhibit A." Twelve days later, Defendants' counsel sent another update "on the escrow account and related issues." After another month of continuing to iron out the details on the escrow agreement, Defendants' counsel wrote on August 22, 2019, "I spoke to [Defendant Gray] the other day. He is still working on an escrow agent but is planning to pay the September rent directly to the landlord." Defendants' actions demonstrated a clear intent to comply with the proposed escrow agreement. A true and accurate copy of the aforementioned email chain is attached hereto as Exhibit B.

14. On September 12, 2019, Defendant Gray represented that escrow payments had been funded by GrowthOps into a separate bank account and specifically represented that "GrowthOps is prepared to handle Sept Escrow and Oct Rent in the same manner if needed… [w]e remain aligned that the escrow funds are for use of future and unfunded rent scenarios that could occur prior to

end of lease in Feb 2024." A true and accurate copy of the aforementioned email chain is attached hereto as Exhibit C.

15. GrowthOps – through Gray – promised S2G it opened a bank account where it was – and would continue – depositing money to facilitate this arrangement, and GrowthOps claimed it found an escrow agent. But for locating a mutually satisfactory bank account and escrow agent, the parties agreed on the material terms of an escrow agreement, and prior to entering into the overall set of transactions, including the MSA/SOW, the parties agreed in writing that, as between themselves, the provisions of the escrow agreement would be operative.

16. Ultimately, the MSA and SOW, as well as the associated asset purchase documents and subject sublease, were signed in July 2019, but the escrow agreement was only executed by S2G and was *not* executed by GrowthOps. GrowthOps – through Gray – provided the escrow agreement to its preferred escrow agent; however, the prospective escrow agent declined to serve in that role.

17. Thereafter, GrowthOps – through Gray – promised S2G it would find an escrow agent and execute the escrow agreement.

18. Nevertheless, it now appears that GrowthOps and Gray failed to exercise any good faith effort in attempting to find an alternative bank account and escrow agent.

19. In the Fall 2018, GrowthOps – through Gray – once again confirmed

its agreement to the form and terms (slightly amended at the request of GrowthOps) of the escrow agreement. This time S2G took it upon itself to secure a Texas Chartered Trust Company, Advance Trust and Life Escrow Services ("ATLES"), as the escrow agent and supplied references for ATLES to GrowthOps. It presented Gray and GrowthOps with the escrow agreement executed by ATLES *and* S2G. In bad faith and inconsistent with its prior promises, Gray failed to sign the escrow agreement on behalf of GrowthOps, and neither Gray nor GrowthOps ever found or properly offered another escrow agent.

20. GrowthOps took affirmative actions consistent with the terms of the parties' agreement to escrow the funds for the rental payments. For example, GrowthOps began (at least in September 2019) to make payments of $37,964.24 to S2G. Ultimately, GrowthOps paid $189,821.20 - $151,856.96 (4 months) on January 3, 2020 and $37,964.24 (1 month) on January 24, 2020 - an amount equivalent to five months of the agreed to escrow payments. It never paid any more, and then later attempted to claim there was no escrow agreement at all despite performing for several months as if there was such an agreement.

21. On information and belief, GrowthOps's Customer terminated its contract with GrowthOps in and around January 2021, through no action or inaction of S2G.

22. On January 28, 2021, GrowthOps – through Gray – attempted to give

S2G notice of its intent to terminate the MSA/SOW with S2G "for cause", and it combined this notice with an intent to terminate for convenience based on GrowthOps's Customer's termination of its agreement with GrowthOps.

23. Pursuant to the MSA, a party could terminate the MSA or SOW "on written notice to the other Party if the other Party fails (following notice of the specifics (*sic*) details of a claimed default and a reasonable opportunity to sure (*sic*) the same) to cure a material breach of this Agreement or the SOW, as applicable, within thirty (30) days (or such other period as may be reasonable under the circumstances) after receiving a written notice of material breach." MSA, Section 4(a).

24. GrowthOps and Gray have failed to identify any purported breaches of the MSA or SOW by S2G, and GrowthOps never provided any written notice of material breach to S2G.

25. GrowthOps and Gray have failed to provide to S2G any opportunity to cure any purported breaches.

26. GrowthOps and Gray's attempt to terminate the MSA/SOW for cause was improper. There was no proper basis to terminate S2G "for cause," and that attempt in itself was a breach of the MSA/SOW because GrowthOps and Gray failed to provide prior notice of default and an opportunity to cure as required by the MSA/SOW.

27. Pursuant to the MSA/SOW, GrowthOps was permitted to terminate "without cause" upon 90-days' notice, effective no earlier than May 1, 2021.

28. S2G fully performed under the agreements until April 30, 2021 as required, but GrowthOps has failed and refused to pay S2G $387,467.04 for its March 2021 services, which was due April 30, 2021.

29. In addition, GrowthOps has failed and refused to pay S2G $296,308.32 for its April 2021 services, which was due May 31, 2021

30. Similarly, on previous billings, GrowthOps failed to pay S2G at least $154,228.80, and had *not* paid to S2G the 65% of any disputed amounts that was contractually required by the MSA/SOW.

31. Because Defendant Gray intentionally executed the subject agreements with S2G on behalf of GrowthOps when he knew the company was not properly registered with the State of Georgia and could not carry on any business at any time during the events outlined above, or even as of the time of the filing of this lawsuit, Defendant Gray acted in his individual capacity in operating GrowthOps as a sole proprietorship. Additionally, the actions alleged to have been taken by GrowthOps and the claims against GrowthOps are actions actually committed by Gray in his individual capacity. To the extent GrowthOps is liable to S2G as alleged herein, that liability also rests with Gray individually since GrowthOps's business entity status was administratively revoked by the State of

Georgia in 2015, four years prior to the execution of the agreement. Therefore, S2G asserts that the factual allegations and legal claims asserted against GrowthOps may also be asserted against Gray.

## COUNT I

### Breach of Contract

32. S2G incorporates by reference the above paragraphs as if fully restated herein.

33. The MSA/SOW between Defendants and S2G set out the method for calculating the amount Defendants were to pay S2G and the deadlines for such payments. Despite S2G properly invoicing the amounts owed on a monthly basis as required under the agreements, Defendants routinely underpaid S2G and failed and refused to pay the required 65% of any disputed amounts.

34. Moreover, when Defendants underpaid the contractually agreed to amounts, they repeatedly failed to provide the appropriate notice and documentation of the basis for its refusal to pay S2G the amount owed.

35. As of the filing of this lawsuit, Defendants have failed to pay S2G for its services rendered for the following periods:

- June 2020: $14,251.09
- July 2020: $26,981.41
- August 2020: $12,387.16
- September 2020: $9,177.10
- October 2020: $22,268.44

- November 2020: $3,714.98
- December 2020: $11,143.16
- January 2021: $28,413.33
- February 2021: $25,892.13
- March 2021: $387,467.04
- April 2021: $296,308.32

36. Thus, the unpaid amount for actual services provided by S2G to GrowthOps is at least $838,004.16 as of June 1, 2021.

37. Further, as shown above, Defendants agreed to make escrow payments under the escrow agreement and to select an escrow agent to receive such payments. Defendants made the first five months of escrow payments pursuant to the escrow agreement, but have failed to make any further payments.

38. Defendants induced S2G to enter into an agreement that would require, in part, S2G assuming a sublease position and Defendants knew going into the relationship that S2G would only enter into this relationship if funds for future rental payments were paid into the escrow account by Defendants. Thus, Defendants agreed to be bound to the escrow agreement as an inducement and as a part of the overall transaction under which S2G and Defendants entered into the MSA/SOW. While Defendants paid five of the twenty-one months they owed, they did not pay all that was due. To date, the unpaid escrow payments total $607,427.84.

39. The purpose of Defendants' purported termination "for cause" was to

avoid yet another contractual payment to S2G under the MSA. Since the termination "for cause" was not appropriate, the MSA provides that Defendants owe S2G $135,000 as a result of the termination. *See* SOW ¶ 6.1.

40. All of the aforementioned breaches have damaged S2G in an amount to be determined at trial.

## COUNT II
### Breach of Duty of Good Faith and Fair Dealing

41. S2G incorporates by reference the above paragraphs as if fully restated herein.

42. Defendants owed S2G a statutory duty of good faith in the performance of their contractual obligations and a common law duty of good faith and fair dealing.

43. Defendants breached the above-referenced agreements by failing and refusing to make timely payments when due and by failing to properly escrow certain funds.

44. Defendants violated their obligations of good faith and fair dealing by, *inter alia*, contracting with S2G knowing that GrowthOps was administratively dissolved and could not carry on any business.

45. Defendants' actions caused financial harm to S2G.

46. By refusing to make timely payments when due and by refusing to

escrow certain funds, Defendants failed to perform their contractual obligations in good faith and violated their obligations of good faith and fair dealing. Defendants' refusal to make timely payments and failure to properly escrow certain funds was a breach of the duty of good faith and fair dealing and caused financial harm to S2G.

## COUNT III
### Promissory Estoppel

47. S2G incorporates by reference the above paragraphs as if fully restated herein.

48. With full knowledge that they would subsequently refuse to perform, Defendants promised to escrow certain funds as a material inducement for S2G to enter in to the MSA and/or SOW.

49. Before executing the MSA/SOW, Defendants represented to S2G that they agreed to the escrow agreement and that Defendants would, *inter alia*, make certain escrow payments.

50. Thereafter, the parties proceeded as if the escrow agreement were in place. Among other things, Defendants for five months made the required escrow payments consistent with the terms of the escrow agreement, but have subsequently attempted to deny the existence of such escrow agreement.

51. Defendants should have expected that S2G would rely on their promises to escrow certain funds.

52. S2G reasonably relied on Defendants' promise to its detriment by

surrendering or forgoing valuable rights. Injustice can be avoided only by enforcement of the promise.

53. Defendants' refusal to escrow certain funds has caused financial harm to S2G.

## COUNT IV

### Fraud

54. S2G incorporates by reference the above paragraphs as if fully restated herein.

55. Defendants' intentional misrepresentations prior to and after the execution of the MSA/SOW were made with the intent S2G would enter into a stay in the contractual relationship. Defendant Gray falsely represented that GrowthOps was a corporation compliant to carry on any business in Georgia, when in fact, it had been administratively dissolved for four years.  Defendant GrowthOps - through Gray - made repeated false representations to S2G regarding the escrow issues described above to manipulate S2G into entering into the contract and remaining in the subject agreements. Moreover, the ongoing intentional misrepresentations regarding Customer's needs and requirements were explicitly designed to give Defendants an opportunity to assert control over S2G's employees and infrastructure for unfounded and inappropriate reasons. Each of these fraudulent actions caused damages to S2G.

## COUNT V

### Negligent Misrepresentation

56. S2G incorporates by reference the above paragraphs as if fully restated herein.

57. In the alternative, Defendants' conduct constitutes negligent misrepresentations. Defendants made multiple misrepresentations regarding the intent and ability to execute the escrow agreement, or, in some other way, provide the security that the escrow payments would have provided for future rental payments. Defendants were well aware that the escrow payment issue was important to S2G, and these assurances were intended to induce S2G to enter into the contract and to remain in the contract with Defendants. To the extent the misrepresentations do not rise to the level of fraud, they are negligent and thus constitute negligent misrepresentation. These negligent misrepresentations caused harm to S2G.

## COUNT VI

### O.C.G.A. § 13-6-11 Expenses of Litigation

58. S2G incorporates by reference the above paragraphs as if fully restated herein.

59. In breaching the subject agreements and various promises related thereto, GrowthOps has acted in bad faith, has been stubbornly litigious, and has

caused S2G unnecessary trouble and expense.

60. In addition, under the terms of the MSA, Defendants agreed to indemnify S2G for any expenses, including attorney's fees, arising from any fraudulent or intentional act by Defendants.

61. As a result, S2G is entitled to recover its litigation expenses incurred in this matter.

## JURY DEMAND

62. S2G demands a trial by jury on all these matters.

## PRAYER

WHEREFORE, in light of the foregoing, S2G–Utah, LLC respectfully requests that the Court enter judgment against Defendants MJS2, LLC d/b/a GrowthOps and William Gray on all counts, awarding it its reasonable damages and attorneys' fees and costs, including but not limited to prejudgment interest and post judgment interest and grant to S2G-Utah, LLC any other relief, at law or in equity, deemed appropriate by the Court.

Respectfully submitted,

**NELSON MULLINS REILY & SCARBOROUGH, LLP**

/s/ Jeffrey L. Mapen
Jeffrey L. Mapen
Georgia Bar No. 469936
jeff.mapen@nelsonmullins.com
Amy B. Cheng

Georgia Bar No. 261897
amy.cheng@nelsonmullins.com
201 17th Street NW, #1700
Atlanta, Georgia 30363
Tel: (404) 322-6000
Fax: (404) 322-6050

**BEARD KULTGEN BROPHY BOSTWICK & DICKSON, PLLC**

/s/ Andy McSwain
Andy McSwain
Texas Bar No. 1386110
mcswain@thetexasfirm.com
Dan N. MacLemore
Texas Bar No. 24037013
maclemore@thetexasfirm.com
220 South Fourth Street
Waco, Texas 76701
Tel. (254) 776-5500
Fax (254) 776-3591

*Pro Hac Vice Forthcoming*

**FEE, SMITH, SHARP & VITULLO, LLP**

/s/ Anthony L. "Lenny" Vitullo
Anthony L. "Lenny" Vitullo
Texas Bar No. 20595500
lvitullo@feesmith.com
Three Galleria Tower
13155 Noel Road, Suite 1000
Dallas, Texas 75240
Tel. (972) 980-3254
Fax (972) 934-9200

*Pro Hac Vice Forthcoming*

*Counsel for Plaintiff*

## LOCAL RULE 7.1(D) CERTIFICATION

The undersigned counsel for Plaintiff S2G-Utah, LLC hereby certifies that the foregoing has been prepared with one of the font (Times New Roman) and point selections (14 pt) approved by the Court in Local Rule 5.1(B) and (C).

This 10th day of June, 2021.

                                              */s/ Jeffrey Mapen*
                                              Jeffrey Mapen
                                              Georgia Bar No. 469936
                                              Amy B. Cheng
                                              Georgia Bar No. 261897
                                              jeff.mapen@nelsonmullins.com
                                              amy.cheng@nelsonmullins.com

NELSON MULLINS RILEY & SCARBOROUGH LLP
Atlantic Station / 201 17th Street, NW / Suite 1700
Atlanta, GA 30363
(404) 322-6000 (phone)
(404) 322-6050 (fax)